JOHNSON v. COBB.

1. In action for the recovery of land, plaintiff can recover only by proving title in himself; but where he proves title as heir at law of B, it is sufficient if he further shows that defendant went into possession and claimed his title also under B.

2. The admissions in the answer sufficiently identified the tract of land

described in the complaint, by stating its former ownership and boundaries, notwithstanding a difference in the number of acres.

3. Motion for security for costs, made at the trial on only three days' notice, was not improperly refused. Is the refusal of such a motion appealable?

4. A proceeding instituted in the old court of ordinary (which was a court of special and limited jurisdiction), by the grandfather of two infants, for the sale of a tract of land, without any notice to the infants, to whom the land exclusively belonged, was absolutely void, and the purchaser under such proceeding acquired no title.

5. Under the old statute of limitations (prior to the code), a person could not, by adverse possession, defeat the claim of the rightful owner to land, without showing that she (the adverse possessor), or those under whom she claimed, had held the land adversely for ten consecutive years, five of which were after the owner's majority. Under the code, the adverse holding must be for ten years after disability removed.

6. Where lands held by a trespasser are sold for partition after his death and purchased by one of the heirs, who afterwards conveys it to the other heir, these purchasers are not in possession by descent from their ancestor, but as of a new entry, and their trespass cannot be tacked to the ancestor's trespass to complete the statutory bar. The statute of limitations in force when their trespass commenced will control the case.

Before Norton, J., Abbeville, February, 1888.

This was an action by Mary F. Johnson and Mattie Williams against Louisiana A. Cobb, for the recovery of a tract of land. The action was commenced January 15, 1887. The plaintiffs claimed as children and only heirs at law of James Wesley Buchanan. The defendants claimed to hold under the purchaser of this land at a sale made by decree of the ordinary in December, 1863. This decree was made in a proceeding instituted by William Buchanan (who had no interest in this land), grandfather of the plaintiffs (who were then infants), praying partition of the land. There was an affidavit stating that the land was not worth $1,000, but no statement that these infants owned no other land. The petitioner was appointed guardian *ad litem*, who consented to act as such, and also consented to the sale. The ordinary decreed that it would be better to sell the land and so ordered. No summons was issued nor other notice served upon the minors. William Buchanan was afterwards appointed general guardian of

these infants, and as such received the proceeds of sale, but the infants never received any portion of this money from their guardian.   Other matters are stated in the opinion.

*Messrs. Graydon & Graydon*, for appellants.

*Messrs. Perrin & Cothran*, contra.

October 11, 1888.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   This was an action by the plaintiffs, heirs at law of James W. Buchanan, for "a tract of land on Coronaca Creek, formerly belonging to James W. Buchanan, containing 78 acres, more or less, bounded by lands now or formerly owned by B. Z. Herndon, D. W. Aiken, William Buchanan, and others."   The defendant made two defences: *first*, she "admits that she is in possession of about 140 acres of land formerly belonging to James W. Buchanan, lying within the boundaries stated in the complaint, and admits she withholds the same from the plaintiffs, but she denies each and every allegation;" and for a *second* defence she pleads the statute of limitations.

The plaintiffs reside in the State of Mississippi, and on Friday, February 10, 1888, the defendant gave notice that she would move the court, upon the call of the case for trial, to require security for costs.   The case was called for trial on Monday, February 13, 1888.   His honor refused the motion on the ground that legal notice had not been given, and of the *laches* of the defendant in making the motion.

The issues were then opened to the jury.   There is no "Case" stated as required by the rule of court, but the whole testimony is printed, making it necessary for the court to eliminate from the mass so much as bears upon the points of law, necessary to be considered.   As well as we can gather them, the leading facts are as follows:

James Wesley Buchanan owned a small tract of land in Abbeville County.   He lost his wife, leaving two infant daughters, Martha and Mary, the former born July 21, 1857, and the latter April 29, 1859.   These children, when very young, were sent to Mississippi, where they were cared for by friends, and

have remained ever since. The father, James W. Buchanan, went into the Confederate army and fell in battle, intestate, in the year 1862. On October 22, 1862, William Buchanan, the grandfather of Martha and Mary, who were still in the State of Mississippi, petitioned William Hill, Esq., then the ordinary of Abbeville County, to sell the land of the intestate, James W. Buchanan, for distribution between the two absent minors as his only heirs. On the same day the said William Buchanan was appointed guardian *ad litem* of the said children, and for them consented that the land might be sold, which was acordingly done on sales-day in December, 1862. The land was bid off by one Thomas R. Williams for $1,800, and the said ordinary executed to him titles. On March 15, 1864, the ordinary granted letters of general guardianship of the children to William Buchanan, who received the purchase money of the land, no part of which ever reached the plaintiffs in their homes—Mississippi. It appears that there is no writ or summons in the record, nor any evidence of service or notice to plaintiffs, either in the proceedings for the sale of the land, or the appointment of guardian *ad litem* or of general guardian. The whole proceeding was entirely without their knowledge.

The matter is not very clear, but it seems that C. A. Cobb, the husband of the defendant, took Williams's place in the purchase. He certainly paid most of the purchase money to the ordinary, and it is claimed that Williams made her a deed, which is now lost—the time does not appear, but believed to be about the time the purchase money was paid to the ordinary, viz., December 7, 1863. Certainly about this time C. A. Cobb took possession of the land, and continued to hold it until he died in 1876, when it was sold as his intestate property for partition among his heirs, and bid off by W. A. Cobb, one of the heirs, and title to the same was made to him by T. B. Millford, Esq., judge of probate, on December 12, 1876. The purchaser, W. M. Cobb, took possession and paid a large part of the purchase money, but finding that he was unable to pay the balance, he sold and conveyed the land. on October 3, 1883, to his mother, the defendant, who thereby regained possession and retained it until the action was brought on January 12, 1887.

The plaintiffs claim that as the only heirs of James W. Buchanan, the title to the land descended to them; and that they were not divested of that title by the irregular and perfunctory proceedings had in the court of ordinary for the sale of the land, which took place while they were minors in the State of Mississippi, and without pretence of notice to them, and that proceeding was therefore absolutely void; and also that, being minors in law until the youngest sister attained her majority on April 29, 1880, they were not bound by the statute of limitations on January 12, 1887, when this action was brought, six years, eight months, and thirteen days thereafter.

Upon the close of the plaintiffs' testimony, the defendant made a motion for a non-suit on several grounds, which will be referred to hereafter. The judge refused the motion, and the trial proceeded. Both parties submitted requests to charge, but it will not be necessary to notice any of them except those to which there are exceptions. Under the charge the jury found for the plaintiffs "the land in dispute," and the defendant appeals to this court upon numerous exceptions (20 in number), which are printed in the Brief and need not be set out here. We will endeavor to classify and consider them in the order of the subject matter.

MOTION FOR NON-SUIT.—1. Because the plaintiffs failed to show any title to the land in dispute. It is true, there is a rule in actions for the recovery of land, that the plaintiff must recover (if at all) on the strength of his own title; but to that rule there is a well established exception, when the plaintiff and defendant both claim from the same source. It appears that these plaintiffs claimed as the heirs of James W. Buchanan, who "owned" the land before it was sold by the ordinary as his intestate property; and that at that sale, C. A. Cobb, the husband of the defendant, (through one Williams) purchased the land, and soon after went into the possession of it—claiming under the said James W. Buchanan, deceased. We agree with the judge that this brought the case clearly within the exception above indicated, and that in tracing title it was unnecessary for the plaintiffs to go further back than to the said James W. Buchanan, the common source of title. See *Hill* v. *Robertson* (1 Strob., 1), a case very much like this in many respects, in which Judge

Evans said: "It is against the moral policy of the law to permit one to dispute the title under which he took possession of the land." See *Bonham* v. *Bishop*, 23 S. C., 100, and *Geiger* v. *Kaigler*, 15 *Id.*, 262, and authorities there cited.

2 and 3, as we understand it, make the point that the land sued for, indicating the boundaries, was not shown to be the land referred to by the defendant as being in her possession. It is true, the number of acres, "more or less," was different, but there was complete identity in all other respects, that the land "formerly belonged to James W. Buchanan," and "lying within the boundaries stated in the complaint." The defendant in her answer "admits that she is in possession of about 140 acres of land formerly belonging to James W. Buchanan, lying within the boundaries stated in the complaint, and admits that she withholds the same from the plaintiffs," &c. It is clear that the defendant did not mean to deny the identity of the land, but to rely upon her title. When the number of acres is referred to as part of the description of the land, it may be controlled by other facts—such as the boundaries. The thing sued for was "all that tract of land," &c. We do not think the judge erred in refusing to take the question from the jury by granting a non-suit for want of identity. See *Barksdale* v. *Toomer*, Harper, 290, and *Bratton* v. *Clawson*, 3 Strob., 127.

5. Because there was a total failure of evidence. The judge, in the exercise of his judgment, thought there was some evidence to go to the jury, and we cannot say that in this he was in error.

4. This ground refers to the defence of the statute of limitations, and as that is a very important question in the case, we will, for the sake of clearness and to prevent repetition, take it up in connection with the numerous exceptions for a new trial on that subject.

NEW TRIAL.—Exception 18 complains that it was error to refuse to grant the order for security for costs. The exception was not pressed in the argument. Under the case of *McMillan* v. *McCall* (2 S. C., 390), it may be doubted whether an order concerning security for costs is reviewable on appeal, unless it results in a termination of the action by a non-suit. The notice seems to have been very short. Four days' notice should be

given of a motion requiring security for costs. Besides, the motion should have been made at an earlier stage of the case. *Dulany & Co.* v. *Elford & Dargan,* 22 S. C., 304.

Exceptions 12 and 19 charge error in the ruling of the judge, that the jurisdiction of the old Court of Ordinary was limited and special, and that the whole proceedings under which the land was sold as the intestate property of James W. Buchanan, deceased, was absolutely void and did not operate to divest the plaintiffs of title to the land as the heirs at law. We think there was no error in this. The only persons who had "an interest" in the land were infants living in the State of Mississippi. The record shows that they had no notice of any kind whatever, and as a matter of course, the whole proceeding was without authority and void. As was said by Judge Evans, in *Hill* v. *Robertson, supra* (a case in many respects like this): "It would be a waste of words to attempt to prove that the proceedings of a court of limited jurisdiction, in a case clearly without its jurisdiction, are absolutely void, and may be so declared, whenever the question is presented, whether directly or collaterally." We have lately had occasion to consider this subject in a case not so strong as this, and we think it is not necessary to go into the argument again, or do more than cite that case—*Tederall* v. *Bouknight,* 25 S. C., 278.

All the other exceptions in different forms relate to the statute of limitations, and complain of errors of the charge in reference thereto. As the parties are not agreed as to what the judge did charge, it may be well to give his words. He said: "In order to constitute title by the statute of limitations, it was necessary before our code, which was adopted in 1870, that some one person must have held land ten years adversely to the party in whom the supposed legal title existed. That is, if A has the land in possession adversely for nine years and sells it to B, A could not set up title as a real owner, for neither he nor B could claim it, as neither had held it continuously for ten years, although both had held it for eighteen years, if B held it nine years. But that applies only to the case of adults. If they are minors, then a different relation prevails. Two might hold twenty years adversely or one person might hold adversely to

a minor; that would not give title. But if he held twenty-six years adversely to a minor, that would give title under the old law. The law required that one person could hold ten years against anybody, and at least five of those years must have been adverse to the minor after minority ceased. 　＊　＊　＊

"The plaintiff has, then, proved a title from Williams to Cobb, then a sale as the property of Cobb, and then a sale by the purchaser at that sale to Mrs. Cobb. Now, the dates of these deeds were as follows: deed from Hill, ordinary, '62; that would be a color of title, from which adverse possession would begin December 1, 1862. Then the lost deed of Cobb. That would not be material, if you come to the conclusion that these parties were minors, because no holding would affect their title as minors. Then the deed of Cobb (W. M.) of 1876. That is the first deed after the majority of plaintiffs [mistake, they were minors until 1880.] The last one of the plaintiffs was born April 29, 1859, and would have been of age in 1880, and this deed was made out during the minority too, and the next deed was from W. M. Cobb, October 8, 1883, to Louisiana A. Cobb. Now, gentlemen, are the dates of these deeds correct? If so, W. M. Cobb did not hold ten years adversely to the plaintiffs, nor did Louisiana A. Cobb hold adversely to the plaintiffs, because ten years had not expired, and she is not able to trace her title to any one, according to the testimony, who did hold adversely for ten years as against these minors, five years of which was after their coming of age. Therefore, if you believe that these deeds were dated as of the dates that they purport to have been dated, then the title by adverse possession would fail," &c.

It will be observed that the law as to the effect of the successive sales and transfers of the land, was announced without taking any account of the fact that W. M. Cobb was the son, and Mrs. Cobb the widow of, C. A. Cobb, the original adverse possessor; and it is earnestly insisted that this was error—that Mrs. Cobb and W. M. Cobb being of "the heirs" of C. A. Cobb, their possession may be regarded as the continuance of his; that there was, in fact, but one continuous possession, which, commencing in 1863 (before the code of 1870), when an action accrued to the minors as against C. A. Cobb under the old statute, continued

unbroken down to the time the action was brought against Mrs. Cobb (1887), and five years of that time having been after the youngest child reached her majority, the bar was complete under the old statute, which (1788) only allowed five years after majority. *Hill* v. *Connelly*, 4 Rich., 619. It may be that this would have been the result if the land had never been sold by order of court as the property of C. A. Cobb, deceased, and the wife and children had simply remained on the land as "the heirs" of C. A. Cobb. As was said in the late case of *Duren* v. *Kee*, 26 S. C., 224: "We take it to be settled that when there is no new entry, but the heir is in of his ancestor's possession, the possession of the heir is that of the ancestor, and may be united with it in making out the necessary period to give title."

So that the question is reduced to this: did the sale of the land in 1876, as the intestate property of C. A. Cobb, for partition among his heirs, break the continuity of the possession by "the heirs" as such? It seems to us that when the land was sold as the property of C. A. Cobb, deceased, and title executed, his original possession then ended, and as the plaintiffs were minors during the whole period of his possession, it passes for nothing as against them; and the purchaser, W. M. Cobb, although a son, under the title of the probate judge to him, was *not* "in of his ancestor's possession," but by "a new entry" in his own individual right; that the title to him and his possession under it gave a new possession not as "heir" but as purchaser; and the same as to the sale and conveyance of W. M. Cobb to his mother, the defendant, in 1883. "Entry" is defined to be "the act of going on land, or doing something equivalent, with the intention of asserting a right in the land." *R. & L. Law Dict.*, title "Entry." And see the case of *Congdon* v. *Morgan* (14 S. C., 596), where Mr. Justice McIver said: "When, therefore, the defendants, by their agent, McQuaid, subsequently took possession and ousted the plaintiffs, that was a new trespass, for which they became liable to suit, and their possession must be regarded as originating in such trespass, and not as a continuation of the possession of Arthur Morgan cast upon them by descent, because such possession had not only been interrupted, but put an end to by the possession rightfully," &c.

In the view that neither the father, C. A. Cobb, nor the son, W. M. Cobb, had acquired title as against the plaintiffs, and that the continuous possession of the "heirs" as such had been broken, and Mrs. Cobb, the defendant, could not tack her possession to that of either her deceased husband or her son, W. M. Cobb, from whom she purchased, but must stand on her own individual "entry" under the deed to her from her son in 1883 (when for the first time an action accrued to the plaintiffs against her individually), it follows that the action was against her for her own adverse possession, which commenced in 1883, after the adoption of the new statute (1870), which therefore must control the case; and that not having, according to the terms of that statute, possession for ten years after disability removed, the bar of the statute was not complete.

There were in the numerous exceptions some subordinate points made, but we think they are all substantially disposed of by the above ruling upon the main question.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.